# SEALED

**BY ORDER OF THE COURT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Oct 14, 2021, 4:17 pm
Michelle Rynne, Clerk of Court

| | |
|---|---|
| IN RE: CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST,<br><br>Movant. | Case No. 21-MC-00298-DKW-KJM<br><br>**ORDER GRANTING MOTION TO UNSEAL PLEA AGREEMENT** |

On June 9, 2021, Defendant Norman L. Akau III pled guilty to participating in what the Government refers to as the "Miske Enterprise," in violation of the racketeering laws of the United States. *See* Cr. Dkt. Nos. 3, 249.[1]  At the plea hearing, Akau's counsel requested that the plea agreement be filed under seal, and, upon no objection by the Government, the Court consented. *Id.*; *see* Memorandum of Plea Agreement (the "Agreement"), Cr. Dkt. No. 250.

On July 23, 2021, third-party Civil Beat Law Center for the Public Interest ("Civil Beat") filed a motion to unseal the Agreement, citing its interest in the Miske case and its constitutional right of access to criminal proceedings.  Misc. Dkt. No. 1.  In opposition, Akau asserts that disclosure will harm certain compelling interests that override the public's right of access—namely, his own personal safety and the success of the Government's ongoing investigation.  Misc.

---

[1] In this Order, "Misc. Dkt." will refer to the docket for the instant closure case, *In re: Civil Beat Law Center*, Misc. Case No. 21-00298-DKW-KJM.  "Cr. Dkt." will refer to the docket for the underlying criminal case, *United States v. Akau*, Cr. Case No. 19-00099-09-DKW-KJM.

Dkt. No. 8.  At oral argument on September 23, 2021, the Government confirmed that it takes no position on the motion.

The Court GRANTS Civil Beat's motion and orders the Agreement unsealed, as specified below.  Akau's arguments are just that – argument without any evidentiary support demonstrating the requisite substantial probability of harm to his asserted interests.  The Court stays the effective date of this Order through October 19, 2021, in order to afford Akau an opportunity to seek relief at the Ninth Circuit.

## RELEVANT BACKGROUND

### I.  The Underlying Criminal Case

The Miske Enterprise is an alleged criminal organization led by Michael J. Miske.  The Government claims that Miske used his power over members, his reputation for violence in the community, and his various corporate entities to enrich the members and associates of the Miske Enterprise and perpetrate their various criminal activities.  6/18/20 Superseding Indictment, Cr. Dkt. No. 3; 7/15/21 Second Superseding Indictment, Cr. Dkt. No. 272 (the "Indictments").

In the last three years, the Government has brought at least six cases against at least eighteen defendants in the District of Hawaii[2] for their alleged involvement

---

[2] *See United States v. Ashlin Akau*, Cr. Case No. 21-00016; *United States v. Wayne Miller*, Cr. Case No. 20-00113; *United States v. Jacob Smith*, Cr. Case No. 20-00086; *United States v. Timothy Taboada*, Cr. Case No. 19-00147; *United States v. Jonah Ortiz*, Cr. Case No. 19-00141;

with the Miske Enterprise. Crimes charged include racketeering, murder, distribution of controlled substances, robbery, arson, extortion, and bank fraud. *See, e.g.*, Cr. Dkt. Nos. 3, 272.

In Counts 1, 16, 17, 18, and 19 of the 6/18/20 Superseding Indictment, Akau was charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to distribute and to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846, carrying and using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), Hobbs Act Robbery in violation of 18 U.S.C. § 1951, and carrying and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Cr. Dkt. No. 3. On July 17, 2020, Akau pled not guilty to these charges. Cr. Dkt. No. 49. On June 9, 2021, he entered into a plea agreement with the Government in which he pled guilty to Count 1 in return for the Government's promise to move to dismiss the remaining charges after sentencing. Cr. Dkt. Nos. 249, 250.

At his Change of Plea Hearing, Akau's counsel verbally requested that the Agreement be filed under seal. Cr. Dkt. No. 249. Upon no objection by the Government, the Court consented. *Id.*

---

and *United States v. Miske, et al.*, Cr. Case No. 19-00099 (involving thirteen defendants, one of whom is Akau).

## II. The Instant Motion to Unseal

On July 23, 2021, Civil Beat, an entity with a significant on-line media presence, filed a motion to unseal the Agreement, arguing that the public has a First Amendment right of access to the records of criminal proceedings that can only be overcome by a compelling overriding interest. Misc. Dkt. No. 1.

The Court directed the parties to submit briefing on the motion and set oral argument for September 23, 2021. Misc. Dkt. No. 6. On September 1, Akau filed a Memorandum in Opposition, asserting that disclosure of the Agreement would endanger his and his family's safety and would compromise the Government's ongoing investigation into the Miske Enterprise because it reflected Akau's "cooperat[ion] with authorities." Misc. Dkt. No. 8 at 3–4. Akau's counsel also attached his own Declaration asserting his "opinion" that unsealing the Agreement would subject Akau to the risk of "attack [or] injury" and could "be used as a basis to put a green light on him (kill order)."[3] *Id.* at 6. The only factual support provided for defense counsel's claims was that Akau's offense "involved a high-profile racketeering enterprise alleged to have been controlled and directed by a high-profile Honolulu businessman." *See id.* at 4. On September 9, Civil Beat

---

[3] Akau's Memorandum in Opposition, along with counsel's Declaration, were filed in partially redacted form. *See* Misc. Dkt. No. 8. Akau did not follow Local Rule 5.2(c) by filing a public, written motion to seal these portions of his Opposition. Nevertheless, "[t]o avoid further prolonging this dispute," Civil Beat did not object to the redactions. Misc. Dkt. No. 9 at 5 n. 5.

filed a Reply Memorandum, arguing that Akau's conclusory statements do not override the public's right of access. *See generally* Misc. Dkt. No. 9.

The Court heard oral argument on this matter on September 23, 2021. Misc. Dkt. No. 10. During the hearing, Akau's counsel re-asserted concerns about Akau's safety, pointing out that Akau is currently in pretrial custody in the same facility as some of his co-defendants. *Id.* Defense counsel also stated that there has been some on-line "harassment" of Akau by unidentified sources, and he stated his belief that it is typical practice among federal district courts to seal plea agreements, at least before trial, in order to prevent "danger" and encourage cooperation. *Id.* The Government, which was also represented at the September 23 hearing, neither supported nor opposed sealing. *Id.*

## **LEGAL STANDARD**

The public has a presumed First Amendment right of access to criminal proceedings. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982). This right is "essential to public confidence in the criminal justice system." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 501 (1984). "Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Id.* at 509.

The First Amendment right of access does not end at the courtroom doors but extends to pretrial document filings, including plea agreements. *Oregonian*

*Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465–66 (9th Cir. 1990) (holding that the right applies to plea agreements, which, "in many respects, . . . take[] the place of the criminal trial" today). The right also specifically extends to transcripts of plea colloquies and "cooperation addend[a]"—generally, the parts of plea agreements that provide the requisite factual predicate for the guilty plea.[4] *In re Copley Press, Inc.*, 518 F.3d 1022, 1028 (9th Cir. 2008).

This right of access is not absolute. But it "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co.*, 464 U.S. at 510. It is the burden of the party seeking closure to present facts that show: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998).[5] The probability of harm must be shown by "specific factual findings," not "conclusory assertions alone." *Oregonian*, 920 F.2d at 1466.[6]

---

[4] Guilty pleas must always be accompanied by credible factual corroboration. Fed. R. Crim. P. 11(b)(3).

[5] Akau argues that *Oregonian* and *Phoenix Newspapers* do not apply here because they involved petitions for mandamus, rather than motions before trial courts. This procedural difference is irrelevant. Petitions for mandamus are simply the proper mode by which a party appeals a trial court's closure/sealing decision.

[6] Along with these substantive requirements, the Ninth Circuit has also outlined procedural requirements for closure. *Oregonian*, 920 F.2d at 1466 ("(1) [T]hose excluded from the

If the court determines at any time that any document has been improperly sealed or no longer needs to be sealed, it may order its unsealing or take other appropriate action. LR 5.2(e).

## DISCUSSION

To keep the Agreement sealed, Akau must point to specific facts showing (1) there is a substantial likelihood that disclosure will harm a compelling interest, and (2) there are no available alternatives to closure that will adequately protect that interest. *See Oregonian*, 920 F.2d at 1466; *Phoenix Newspapers*, 156 F.3d at 949.

### I. Akau has not shown a substantial probability that a compelling interest will be harmed in the absence of closure.

Akau principally argues that disclosure of the "cooperation language" in the Agreement could jeopardize both his safety and the Government's ongoing investigation. Misc. Dkt. No. 8 at 3. In some cases, these interests *could* be compelling and *could* override the public's constitutional right of access. But speculative jeopardy is not enough. Further, the Government has not asserted that

---

proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings."). Accordingly, Local Rule 5.2(c) requires that a motion to seal a document must be filed in the public record, provide the factual basis for sealing, and explain how the standard for sealing has been met. Anyone may oppose the motion to seal within seven days, and if the court denies the motion to seal, the movant may then notify the court whether it wants to withdraw the document or have it filed publicly. LR 5.2(c). Civil Beat argues that neither the substantive nor the procedural requirements to closure were met in this case. Misc. Dkt. Nos. 1 at 7; 9 at 4–5. Since the procedural requirements are being satisfied now, the question before the Court turns only on the substantive requirements.

7

disclosure is likely to compromise its investigation, an issue that Akau has no standing to contest. With no basis, then, to challenge Civil Beat's First Amendment demands, the Agreement must be unsealed.

### A. The fact that the Agreement was initially sealed does not bar reconsideration of that status.

Akau first argues that since "the Judge ordered the plea agreement sealed and the motion was unopposed," it should stay sealed. Misc. Dkt. No. 8 at 3. This is simply not correct. There is no presumption that, once sealed, a document must remain so. Rather, the Court may order disclosure of a document any time it determines the document was "improperly sealed or no longer needs to be sealed." LR 5.2(e); *see also Oregonian*, 920 F.2d at 1465 (prior closure not a factor); *Phoenix Newspapers*, 156 F.3d at 950 (same).

Nor is it relevant that the Government did not object to closure. Cr. Dkt. No. 249. The Government also did not object to *disclosure*. Misc. Dkt. No. 10. "All too often, parties to the litigation are either indifferent or antipathetic to disclosure requests. This is to be expected: it is not their charge to represent the rights of others." *Phoenix Newspapers*, 156 F.3d at 951. Neither the Court's initial decision to seal nor the Government's indifference affects this analysis. *See id.*

### B. Akau has not shown that disclosure is likely to jeopardize his safety.

Akau next argues that disclosure will endanger his family and himself because the Agreement reflects his cooperation with the Government. Misc. Dkt.

8

Nos. 8 at 3; 10.  Risk to a person's safety can certainly constitute a compelling interest in some cases.  *See, e.g.*, *United States v. Doe*, 870 F.3d 991, 1000 (9th Cir. 2017) (holding that a substantiated safety risk was a compelling interest that overcame the public's right of access).  But the record must reveal a substantial probability that disclosure will harm that interest.  *See, e.g.*, *Phoenix Newspapers*, 156 F.3d at 949–50 (holding that a purported safety risk did not justify closure because the facts did not show "the necessary connection between unsealing [the document at issue] and inflicting irreparable damage upon the security concerns").

In *Oregonian*, the Ninth Circuit held that a district court erred by sealing a defendant's plea agreement out of safety concerns that arose solely because the agreement "contemplated [the defendant's] cooperation with the government." 920 F.2d at 1467.  The district court had based its decision on just two things: (1) the defendant's own assertion that disclosure of the details of his cooperation would create a safety risk, and (2) a letter from the defendant's attorney making a similar assertion.  *Id.*  After noting that the district court's concern for the defendant's safety was "not supported by any factual finding," but was only based on the defendant's and defense counsel's own conclusions, the Ninth Circuit held that this was not enough to show a substantial probability of harm.  *Id.*; *see also Phoenix Newspapers*, 156 F.3d at 943–44, 950 (holding that a district court erred by sealing a hearing transcript because, "[s]imply put, there was no evidence in the

9

record . . . establishing why release of the transcripts would endanger juror safety").

In contrast, in *United States v. Doe*, 870 F.3d 991, 999–1000 (9th Cir. 2017), the Ninth Circuit held that a district court had erred by *not* sealing a particular document where (1) that document described the defendant Doe's substantial cooperation with the Government—including implicating no less than nine members of a wealthy international drug cartel—and where (2) specific facts in the record showed that disclosure was likely to endanger the defendant and his family. The document in question was a U.S.S.G. § 5K1.1 filing, which allows the Government to request sentencing reductions for defendants who provide "substantial assistance in the prosecution of other offenders." *Id.* at 993; 18 U.S.C. U.S.S.G. § 5K1.1. Doe had provided "detailed, verifiable information" to the Government, including "the names, telephone numbers, addresses, and physical descriptions of others involved in importing and distributing methamphetamine," at least one of whom was subsequently arrested. *Doe*, 870 F.3d at 994. "[A]gents corroborated [Doe's] information, indicating it was credible enough to lead to prosecutions against real people," and the Government "confirmed that almost all of Doe's information was accurate, that he had provided information about people in and out of custody, and that agents believed future arrests based on this information remained possible." *Id.* at 998, 1000. "The government found the

10

information so useful that it filed a motion to reduce Doe's sentence by five levels under U.S.S.G. § 5K1.1." *Id.* at 994.

The Government in *Doe* further presented a detailed risk assessment to the district court in which it stated that the risk of retaliation or harm to Doe was, "perhaps, greater than in some other circumstances," both because of the nature and amount of detailed information he had provided and because of other specific facts:

> (1) [H]is offense involved a large international drug-trafficking organization; (2) he lost a load of methamphetamine with a conservative estimated street value of more than half a million dollars; (3) Doe was involved in multiple border crossings and delivered narcotics to numerous locations . . . ; and (4) he cooperated while he was in pre-trial detention by providing incriminating information about others who were also incarcerated.  Moreover, Doe provided information about other defendants whom he recognized during a court appearance.  Presumably, these defendants recognized Doe as well, further jeopardizing his safety if his cooperation became public.

*Id.* at 994, 998–99.  During one drug-related border crossing, Doe's three-year old daughter had accompanied him.  *Id.* at 995.  And there was credible evidence that a member of the cartel had told Doe, "Don't play us dirty because we know where your family is."  *Id.* at 999.  Because of the unusual magnitude of Doe's cooperation and these specific facts showing he was at "heightened" risk, *id.* at 998, the Ninth Circuit found that the safety risk was compelling and substantiated and that the § 5K1.1 filing—along with any document referring to its existence—should be sealed.  *Id.* at 1002.

11

Akau presents a much less compelling case for sealing than *Doe* or even *Oregonian*. For instance, Akau's contentions are not accompanied by any attestation from Akau himself. The record includes only defense counsel's conclusory assertions that disclosure of the plea agreement would endanger Akau and his family because it contemplated his cooperation with the Government, a level of factual support that the Ninth Circuit held was wholly insufficient in *Oregonian*. *See* 920 F.2d at 1466–67; Misc. Dkt. Nos. 8, 10. Defense counsel's assertion that unsealing the "cooperation provisions" of the Agreement would subject Akau to the risk of "attack [or] injury" and could "be used as a basis to put a green light on him (kill order)" is perhaps more colorful than the language relied upon in *Oregonian*, but it is no less conclusory. *See* Misc. Dkt. No. 8 at 6.

Beyond these bare assertions, Akau's best factual justification for his safety concerns—that "his offense involved a high-profile racketeering enterprise alleged to have been controlled and directed by a high-profile Honolulu businessman"—still falls far short. *See* Misc. Dkt. No. 8 at 4. The Court acknowledges that, in a racketeering conspiracy case involving numerous defendants and allegations of serious, violent crimes, there may be risk to any defendant who cooperates with authorities, especially if he is currently incarcerated with some of his co-

defendants.[7]  *See Doe*, 870 F.3d at 999.  The Court also acknowledges that "actual 'paper' proof" memorializing a defendant's cooperation may be more harmful than oral pronouncement of a sentence pursuant to a plea agreement.  *See id.*  It is true that this case involves numerous defendants and allegations and admissions of violent crime, and that Akau has made vague claims of on-line "harassment" since he publicly announced his guilty plea.  Misc. Dkt. No. 10; Cr. Dkt. No. 249.  However, there is no blanket rule that evidence of cooperation must be automatically sealed upon request if a case involves multiple defendants or violent crime.[8]  On the contrary, the Ninth Circuit has explicitly held that the public's First Amendment right of access, without more, demands the converse.  *See In re Copley Press*, 518 F.3d at 1028 (holding the right extends to plea colloquies and "cooperation addend[a]" to plea agreements).  Moreover, the burden to overcome

---

[7]*See* Fed. Judicial Ctr., *Survey of Harm to Cooperators* (Feb. 12, 2016), https://www.fjc.gov/content/310414/survey-harm-cooperators-final-report ("CCACM Report"); *Doe*, 870 F.3d at 999 ("The CCACM Report . . . sheds considerable light on the dangers faced by those who agree to cooperate with government investigations.  The report summarizes the results of a 2015 national survey of district judges, U.S. attorneys, federal defenders, and others involved in the criminal justice system.  District judges reported 571 instances of harm or threats, either physical or economic, to defendants and witnesses between the spring of 2012 and the spring of 2015.  CCACM Report at 2.  This included 31 murders of defendant cooperators.  *Id.*  District judges also reported 363 instances of court records being used to identify cooperators.  *Id.*  The report cautions: 'This is a particular problem in our prisons, where new inmates are routinely required by other inmates to produce dockets or case documents in order to prove whether or not they cooperated. If the new inmates refuse to produce the documents, they are punished.'  *Id.*").

[8]Akau's counsel suggested that it is "standard operating procedure" ("SOP") for district courts to seal plea agreements prior to trial to protect pleading defendants.  Misc. Dkt. Nos. 8 at 5; 10 (arguing the same during the September 23 hearing).  Where that purported SOP comes from is not clear.  What is clear is that that is not the law of this Circuit.

13

this right of access is a high one. Akau must point to facts in the record which show a *substantial probability* of harm that would be *caused by* disclosure of the Agreement. *See Phoenix Newspapers*, 156 F.3d at 949. He has not done this.

Akau's Agreement contains no special level of detail or other characteristic that creates a *Doe*-like compelling reason to seal. The § 5K1.1 filing in *Doe*, as is typical of § 5K1.1 filings, contained a detailed description of what Doe's cooperation consisted of to earn a five-level downward adjustment of the applicable guideline range recommended by the Government. *See* 870 F.3d at 994. Here, the standard cooperation language contained in Akau's plea agreement contains no such detail. *See* Cr. Dkt. No. 250 at 18–21. There is no description of what Akau has done, and, indeed, there is no representation that he has thus far cooperated at all. At best, the facts mentioned in his plea colloquy reference seven co-defendants,[9] all of whom have already been indicted for the activities Akau describes, three of whom have accepted plea agreements themselves,[10] and all of which the defense does *not* seek to seal. *See* Cr. Dkt. Nos. 3, 272, 250; Misc. Dkt. No. 8.

---

[9] The defendants Akau mentions are Michael J. Miske, Jr., Wayne Miller, Jacob Smith, Ashlin Akau, Harry Kauhi, Lance Bermudez, and John B. Stancil. Cr. Dkt. No. 250.
[10] *See United States v. Ashlin Akau*, Cr. Case No. 21-00016, Dkt. No. 14; *United States v. Wayne Miller*, Cr. Case No. 20-00113, Dkt. No. 31; *United States v. Jacob Smith*, Cr. Case No. 20-00086, Dkt. No. 52.

It is worth noting that the plea agreement of every other pleading defendant associated with the Miske Enterprise of which the Court is aware has been filed publicly (not under seal) and without contention.[11] While not determinative, that fact contradicts defense counsel's unsupported statement during the September 23 oral argument that Akau's Agreement differs from the plea agreements in these other cases, implicates significantly more concerns, and thus should be treated accordingly. Misc. Dkt. No. 10. The publicly accessible cooperation provisions in all of these other agreements are virtually identical to those in Akau's.

**II.  Since there is no compelling interest that overrides the public's right of access, there is no reason to consider alternatives to closure.**

If there were a compelling interest justifying closure/sealing, the next step would be to decide whether any more narrowly tailored alternative, such as redaction, would adequately protect that interest. *See Phoenix Newspapers*, 156 F.3d at 949; *Oregonian*, 920 F.2d at 1467 n. 1. Because Akau has not substantiated any such compelling interest here, an analysis of less restrictive alternatives is not necessary.[12]

---

[11] *See, e.g.*, *United States v. Ashlin Akau*, Cr. Case No. 21-00016, Dkt. No. 14; *United States v. Wayne Miller*, Cr. Case No. 20-00113, Dkt. No. 31; *United States v. Jacob Smith*, Cr. Case No. 20-00086, Dkt. No. 52; *United States v. Timothy Taboada*, Cr. Case No. 19-00147, Dkt. No. 43; *United States v. Jonah Ortiz*, Cr. Case No. 19-00141, Dkt. No. 19; Plea Agreement of Hunter J. Wilson, *United States v. Miske, et al.*, Cr. Dkt. No. 224.

[12] Nor has Akau proposed any such alternatives.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion to unseal Defendant Norman L. Akau III's plea agreement, Cr. Dkt. No. 250, is GRANTED.  This Order will be docketed in both relevant cases: Misc. Case No. 21-00298 and Cr. Case No. 19-00099-09.

This Order will remain sealed through October 19, 2021 to afford Akau the opportunity to seek an emergency stay from the Ninth Circuit and will not be effective until that time has passed.  If no such stay order is received within that time frame, this Order will be unsealed, as will the Agreement.

IT IS SO ORDERED.

DATED: October 14, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

In Re: Civil Beat Law Center For The Public Interest; MC 21-00298 DKW-KJM;
**ORDER GRANTING MOTION TO UNSEAL PLEA AGREEMENT**